**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| KAVIN LEE PEEPLES, | Case No. 1:22-cv-622 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| DAVID C. CONLEY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

**I.  Background**

Plaintiff Kavin Lee Peeples, an experienced litigant in this Court,[1] has filed a new prisoner civil rights case alleging inadequate medical care. The complaint form specifically asks prisoners to list any other lawsuits previously filed by the plaintiff "in state or federal court." (Doc. 12 at 2, PageID 254).  In completing that form, Plaintiff listed a number of prior cases litigated in the Southern District of Ohio and in state court, but conspicuously omitted the rest of his litigation history.[2] The undersigned now takes

---

[1]In this Court, Plaintiff has filed four prior civil rights cases, at least three of which have been summarily dismissed on initial screening. *See*, *e.g.*, Case No. 1:22-cv-227-TSB-EPD (civil rights case against President Biden seeking an injunction to suspend export of military weapons to Ukraine, dismissed on initial screening, closed on 10/28/22); Case No. 1:22-cv-215-DRC-EPD (civil rights case with same allegations as Case No. 1:22-cv-227, dismissed on initial screening for lack of constitutional standing and subject matter jurisdiction, closed on 9/12/22); Case No. 1:17-cv-00191-TSB-KLL (complaint of inadequate medical care dismissed on 5/2/17 as frivolous under 28 U.S.C. § 1915(e)(2)(B); Case No. 1:90-cv-484-CBR-JS (civil rights complaint dismissed for lack of jurisdiction on 12/13/90). Plaintiff also has filed at least three habeas corpus petitions and two petitions for writs of mandamus. *See*, *e.g.*, Case No.2:21-cv-4998-JLG-KAJ (pending petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release based in part upon Ohio's failure to treat immune disorder and likelihood of acquiring Covid-19); Case No. 1:19-cv-00340-TSB-KLL (successive habeas corpus petition under § 2254, dismissed and closed 8/24/20); Case No. 2:99-cv-01291-EAS-MRA (original habeas corpus petition filed under § 2254, closed 03/13/01); Case No. 1:20-cv-299-MRB-SKB (petition for writ of mandamus dismissed on initial screening on 5/12/20); Case No. 1:19-cv-971-WOB-SKB (mandamus and/or habeas corpus action dismissed for failure to state a claim on 1/22/20).

[2]*See Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999)("Litigants to whom § 1915(g) applies take heed! An effort to bamboozle the court by seeking permission to proceed *in forma pauperis* after a federal judge has held that § 1915(g) applies to a particular litigant will lead to immediate termination of the suit"); *see also*,

judicial notice of the fact that Plaintiff has been deemed by the Northern District of Ohio to be subject to the "three strike" provision of the PLRA that precludes the filing of additional cases *in forma pauperis* in the absence of "imminent danger." *See* 28 U.S.C. § 1915(g). The Sixth Circuit affirmed that "three strike" determination in *Peeples v. Bradshaw*, 110 Fed. Appx. 590, 591, 2004 WL 2203536, at *1 (6th Cir. 2004).[3]

Based upon the prior ruling by the Northern District of Ohio as well as the prior frivolous cases he has filed in this Court, Plaintiff is barred from filing additional cases *in forma pauperis* absent a showing that he meets the exception set forth in 28 U.S.C. §1915(g):

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury.*

(Emphasis added). Notably, a prisoner-plaintiff who is subject to the prohibition in §1915(g) is not wholly barred from pursuing his case. However, he "cannot use the periodic payment benefits of § 1915(b)," and instead "must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

The undersigned only recently became aware of Plaintiff's full litigation history. Prior to that awareness, on November 30, 2022, the undersigned granted Plaintiff leave

---

*Pinson v. Grimes*, 391 Fed. Appx. 797, 799 (11th Cir. 2010); *Albright v. Holden,* 99 F.3d 1145, 1996 WL 593172 (9th Cir.1996); *Jones v. Director of Dept. of Rehab. and Corrections*, 2022 WL 168719, at *1 (S.D. Ohio Jan. 19, 2022). The undersigned recommends denial of Plaintiff's application, and dismissal with prejudice if Plaintiff fails to pay the requisite full fee.

[3] The Northern District of Ohio cases on which the "three strike" determination was based are: *Peeples v. Zucco*, 1:95 CV 1365 (July 10, 1995); *Peeples v. Dept. of Rehab. and Corrections*, 5:94 CV 2534 (January 11, 1995) and *Peeples v. Dept. of Rehab. and Corrections*, 5:94 CV 2313 (December 19, 1994).

2

to proceed *in forma pauperis* and ordered the U.S. Marshal to serve Defendant David C. Conley as directed by the Plaintiff. (Doc. 11). By separate Order, the undersigned has vacated that order as improvidently granted.[4] Having now more closely reviewed the complaint, the undersigned concludes that Plaintiff has failed to meet the requisite "imminent danger" exception for proceeding *in forma pauperis*. Accordingly, this R&R recommends the denial of Plaintiff's application for leave to proceed *in forma pauperis* as well as the denial of Plaintiff's motion for a temporary restraining order.

## II. Screening Plaintiff's Complaint Under 28 U.S.C. § 1915(g)

The "imminent danger" exception set forth in 28 U.S.C. § 1915(g) is a pleading standard.

> The Sixth Circuit has found that the "imminent danger" exception is "essentially a pleading requirement subject to the ordinary principles of notice pleading," where a plaintiff must show that "his complaint alleged facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger at the time he filed his complaint." *Vandiver v. Prison Health Servs, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (quoting *Vandiver v. Vasbinder*, 416. F. App'x 560, 562 (6th Cir. 2011) and *Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)).

*Alford v. Chambers-Smith*, 2021 WL 164259, at *2 (S.D. Ohio Jan. 19, 2021). It is apparent upon re-examination of Plaintiff's complaint that he has failed to meet this standard.

As referenced, Plaintiff, now age 60, has had an extensive litigation history over the 35 years in which he has been incarcerated.[5] In the above-captioned complaint, Plaintiff alleges that a Certified Nurse Practitioner at SOCF, Defendant David C. Conley,

---

[4]The Order vacating the erroneous grant of Plaintiff's leave to proceed *in forma pauperis* also stays this litigation pending a ruling on this Report and Recommendation or payment of the full filing fee.
[5]See https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A199353.

has denied Plaintiff necessary medical treatment for the condition of leukocytopenia (a/k/a leukopenia) – a medical finding more commonly known as a low white blood cell count.[6] Plaintiff alleges that 18 years ago he was told by an unnamed person that a then-recent white blood cell test "was so low that he had a Life Threatening Medical Condition." (Doc. 12 at 5, PageID 257). Plaintiff further alleges that a medical report dated December 14, 2004 stated "<u>that a definitive diagnosis is impossible</u>" due to the failure of the ODRC Medical Services Department at that time to perform and deliver "essential test and test results to OSU Medical Services." (*Id*., emphasis added).[7]

Importantly for the § 1915(g) inquiry, Plaintiff's complaint is devoid of any reference to dates concerning his alleged low blood cell count beyond 2004. Nevertheless, Plaintiff alleges that Defendant Conley possesses the "education, training, and experience to read the [2004] medical record report and determine that [P]laintiff's serious medical needs were not provided for [in the past]." (Doc. 12 at 5, PageID 257). In addition to Plaintiff's accusation that Defendant has failed to attend to the 2004 finding of leukopenia, Plaintiff states his belief (despite the lack of formal diagnosis) that he has an "immune condition" which is "ongoing" and "requires Diagnosis, Prognosis, Treatment." (*Id*.) Based upon his subjective belief that the 18-year-old blood test reflects an underlying "ongoing medical condition," Plaintiff complains that Defendant has disregarded his request for an "expert

---

[6] A court make take judicial notice of the definition of a common medical condition or term. Merriam-Webster Dictionary defines leukopenia as "a condition in which the number of white blood cells circulating in the blood is abnormally low." https://www.merriam-webster.com/dictionary/leukopenia accessed on 12/9/2022.
[7] Given that leukopenia is a common finding, the lack of a definitive diagnosis is unsurprising. *See*, *e.g.*, https://my.clevelandclinic.org/health/symptoms/17706-low-white-blood-cell-count (listing possible causes as inclusive of infections, drug side effects, immune system disorders like lupus or rheumatoid arthritis, or cancer); https://pubmed.ncbi.nlm.nih.gov/31613563/ (describing leukopenia as "a common finding in the outpatient setting" that can be transient or chronic, extrinsic or intrinsic); https://pubmed.ncbi.nlm.nih.gov/16450737/ ("Differential diagnosis of the decreased leukocyte subpopulation is vast and in many cases leukopenia is only an epiphenomenona of a systemic disease. Therefore therapy is always directed towards the underlying disorder.") (accessed 12/9/2022).

4

medical specialist" to provide a "diagnosis, prognosis, and treatment." (*Id*. at 6, PageID 258). Plaintiff further alleges that Defendant has denied his requests for monthly white cell differential count testing,[8] and for additional testing "before any administration of [unspecified] vaccines." (*Id*. at 7, PageID 259).

In *Alford v. Chambers-Smith*, Chief Judge Marbley summarized the elements that an incarcerated individual subject to the "three strike" rule must show to meet the §1915(g) exception:

> An incarcerated person invoking the "imminent danger" exception must demonstrate two things to a court: (1) that he satisfies the "temporal requirement," in that the danger he faces is "real and proximate and [that] the danger of serious physical injury" exists at the time of the complaint's filing,… and (2) that the allegations pled are sufficient enough to allow a court to "draw reasonable inferences that the danger exists." *Id.*

*Id.*, 2021 WL 164259 at *2 (quoting *Vandiver v. Prison Health Servs, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (additional citation omitted)). Plaintiff's speculative and conclusory allegation that the 2004 blood test report is evidence of an ongoing "serious medical need" that requires monthly testing and a referral to a specialist is not sufficient to demonstrate "imminent danger" such that he may proceed without full payment of the filing fee.

Courts are required to view the § 1915(g) standard through the "liberal pleading" lens of Rule 8, in which "reasonable" inferences are drawn in the pro se plaintiff's favor. See *Vandiver v. Vasbinder*, 416 Fed. Appx. 560 (6th Cir. 2011); *see also Vandiver*, 727 F.3d 580 (reiterating standard). In *Vandiver*, the plaintiff's allegation that defendants were withholding treatment at the time the complaint was filed for his chronic diabetes and Hepatitis C was sufficient to show "imminent danger." *Id.*, 416 Fed. Appx. at 562.

---

[8]Commonly referred to as a CBC with differential, this test is used to measure the amount of each type of white blood cell. See https://medlineplus.gov/lab-tests/blood-differential/ accessed on 12/9/2022.

However, the *Vandiver* court's conclusion that diabetes and Hepatitis C were chronic and potentially life-threatening conditions that required ongoing treatment was consistent with "judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950, 556 U.S. 662, 679 (2009). By contrast, Plaintiff's allegations in this case fail to show either temporal urgency or that any actual danger or risk of serious physical injury exists. Common sense suggests that the lack of monthly testing, formal diagnosis or hypothetical treatment for a yet-undiagnosed condition based upon an 18-year-old blood test does not constitute an "imminent risk" of "serious physical injury."[9]

Apart from the monthly CBC testing and referral to a specialist that Plaintiff seeks based upon the 2004 lab report, Plaintiff's only other allegations concern Defendant's refusal to prescribe "hypoallergenic laundry detergent," which Plaintiff claims was "required… for [Plaintiff]s] reported symptoms of Hypersensitivity to laundry detergent." (Doc. 12 at 8, PageID 260). Specifically, Plaintiff alleges that he "reported [a] severe respiratory reaction which includ[ed] bleeding after exposure to clothing[,] bedding and underwear washed in the SOCF main laundry" and "asked for hypoallergenic laundry detergent to meet his medical needs, at state expense." (*Id*.) Plaintiff further alleges that Defendant Conley "did not order medical test[s] to determine the medical causation of the medical symptoms nor provide a means to do laundry." (*Id.*) He states that Defendant Conley denied Plaintiff's request for further testing upon Defendant's medical judgment that the alleged "immune related medical problems" (reactions to laundry detergent) "were

---

[9]In exhibits attached to his complaint, Plaintiff cites to a number of past grievances and states that he has "raised the facts that I have a Immunodeficiency disease, Multiple Immune Disorders, I have not received any medical treatment for the disease & disorders for many years." (Doc. 12-2 at 2, PageID 270). He further states that his unspecified "Immune Condition has been an ongoing condition which has never received adequate medical attention within the ODRC during his 35 years of incarceration." (Doc. 12-3 at 1, PageID 279).

6

not medical problems at all, but were commissary problems, and that [Plaintiff] should treat his medical problems related to his immune disorders with OTC medications from the prison commissary and not with medical services provided by the state." (*Id.*)[10]

Like the allegations regarding his 2004 low blood count, Plaintiff's allegations regarding his alleged hypersensitivity to laundry detergent are both conclusory and speculative. Plaintiff omits critical factual details such as what year his alleged reaction to laundry detergent occurred,[11] to whom he made a report at the time, or on what authority he basis his claim that a detergent prescription is medically necessary. Even if this Court assumes that Plaintiff experienced his "severe respiratory reaction" more recently than 2004,[12] Plaintiff admits that no cause was established for the allegedly severe symptoms he experienced in the past. Without citing any basis for his hypothesis, Plaintiff speculates that his alleged detergent sensitivity is related to his 2004 blood test and/or to an alleged undiagnosed immune condition. Based on that presumption, Plaintiff alleges he informed Defendant Conley that "[l]eukocytopia and …the [past] respiratory bleeding caused by the severe allergic reaction *could* lead to a Secondary Infection and a Life Threatening Condition." (*Id*. at 9, PageID 261 (emphasis added)).

Plaintiff's allegations regarding the laundry detergent incident lack sufficient detail and specificity to determine anything other than that it occurred in the past. His allegations of future harm are even more conclusory and speculative. *See Taylor v. First*

---

[10]The referenced allegation is more suggestive of a disagreement with Defendant Conley's past medical decision-making than an Eighth Amendment violation. *See, e.g., Brock v. Crawl*, 8 Fed. Appx. 439 (6th Cir. Apr. 27, 2001) (noting that the plaintiff's "essential disagreement with and dispute over the diagnosis and treatment . . . is insufficient to establish a violation of the Eighth Amendment")

[11]The undersigned assumes that the alleged hypersensitivity has not been ongoing for all 35 years in which Plaintiff has been incarcerated.

[12]The record filed in Case No. 2:21-cv-4998 contains grievances about Plaintiff's reaction to laundry detergent in 2020. (*See*, *e.g.*, Doc. 25 t 71, PageID 273).

*Medical Management*, 508 Fed. Appx. 488, 490 (6th Cir. 2012) (plaintiff's allegations that defendants were denying him pain medication and other post-surgery medical care failed to satisfy "imminent danger" exception because complaint was filed in May 2010 and – despite allegation of "ongoing" denial - the only detailed allegations referred to conduct months earlier in September and October 2009). Speculative allegations concerning the possibility of some undefined future harm are insufficient to establish a <u>reasonable</u> inference of "imminent danger" at the time Plaintiff filed his complaint. Here, Plaintiff asks the Court to hypothesize: (1) that Plaintiff continues to have the dangerously low white blood cell count he had eighteen years ago; (2) that Plaintiff's 2004 leukopenia finding is evidence of an (as yet undiagnosed) underlying immunological or other serious medical condition; (3) that the presumed serious medical condition caused him at some point in the past to experience symptoms that were likely caused by a severe allergic reaction to institutional laundry detergent; (4) that a serious allergy to laundry detergent continues; (5) that Defendant Conley is deliberately denying Plaintiff further testing and is refusing to prescribe hypoallergenic laundry detergent based not upon the medical judgment he has expressed to Plaintiff, but upon deliberate indifference to Plaintiff's serious medical needs; (6) that Defendant's Eighth Amendment violation is subjecting Plaintiff to an imminent risk of a serious physical injury because Plaintiff might, on some unknown future date, develop either another severe respiratory reaction or some other secondary infection or life threatening condition. Even under the liberal pleading standards of Rule 8, such speculation on top of speculation fails to demonstrate "imminent harm." *Accord Denby v. Bosco*, 719 Fed. Appx. 405, 406 (5th Cir. 2018) (plaintiff's "speculative and conclusional allegations that he has suffered an undiagnosed concussion, that he

sustained lasting damage to his throat, and that unchecked rectal bleeding is causing a deterioration in his health - leading to diabetes, sleep apnea, and possibly anoxic anemia - are insufficient to show that he was under imminent danger of serious physical injury at the time he filed his complaint, appeal, or IFP motion in this court.").

Plaintiff's vague and conclusory allegations resemble those made in *Phillips v. Harris*, 2020 WL 523224 (W.D. Tenn. Jan. 31, 2020). In that case, the trial court found that a plaintiff had failed to plead imminent danger where more specific allegations related only to past conduct, and allegations of current mistreatment were overly vague.

> Plaintiff does allege that the medical staff… "constantly causes months of me being without my medications." (ECF No. 1 at PageID 10.) This is the closest Plaintiff gets to alleging danger at the time of filing but this does not satisfy the "imminent danger of serious physical injury" requirement. Courts within the Sixth Circuit have held that prisoners satisfy the imminent danger requirement when they allege failure to receive adequate treatment for potentially life-threatening or chronic illnesses. *See, e.g., Vandiver*, 416 F. App'x at 562–63 (6th Cir. 2011) (*citing Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006)); *Hamby v. Parker*, 307 F. Supp. 3d 822, 826 (M.D. Tenn. 2018) (finding imminent danger when the plaintiff alleged continuous denial of medical treatment for severe neuropathy); *Tripati v. Corizon, Inc.*, No. 13-2286-JDT-cgc, 2013 WL 12415481 at *2 (W.D. Tenn. July 12, 2013) (finding imminent danger when the plaintiff alleged failure to receive prescribed medication for severe pain, severe tremors, shakes, unbearable pain, and the inability to walk and sleep); *Freeman v. Collins*, No. 2:08-cv-00071, 2011 WL 1397594, at *6 (S.D. Ohio Apr. 12, 2011) (finding imminent danger when the plaintiff alleged denied medication and medical treatment for severe/chronic neck, chest, and shoulder pain).
>
> In each of these cases, the prisoner plaintiff cited some medically determinable condition or need for medication or medical care not rendered by the defendants. By contrast here, Plaintiff alleges no medical condition requiring continued medical treatment. (*See id.*) <u>The Court will not assume that an unnamed medical condition is life threatening or chronic</u>. And the Court cannot assume that failure to receive vaguely referred to "medicines," without more, is enough to constitute imminent danger at the time of filing.

*Id.*, 2020 WL 523224 at **2-3 (emphasis added). The undersigned finds the reasoning of *Phillips* to be largely persuasive on the facts alleged in this case, despite reservations about whether the lack of a formal diagnosis is *always* dispositive.[13]

### III. Plaintiff's Motion for a Temporary Restraining Order

In addition to his complaint, Plaintiff has filed a motion for a temporary restraining order ("TRO") that grants him the following preliminary injunctive relief:

1. An Order (a) directing unknown persons to provide a diagnosis and treatment in the relief of "pain and injury," as well as a prognosis; (b) to guarantee proper service on Plaintiff of all documents filed of record and to "ensure [Plaintiff's] capacity to file and serve motions and document[s]"; and (c) to preserve medical evidence relating to this case;

2. An Order directing: (a) transportation to the Ohio State University Medical Center; (b) consultation by a "medical specialist" at that facility to determine Plaintiff's diagnosis, treatment and prognosis; (c) medical testing and procedures by OSU Medical Center staff; (d) medical reports provided to this Court and to Plaintiff by OSU in written form; and (e) any medical treatment determined to be "necessary" by "OSU Med. Ctr. Doctors.";

3. An Order concerning the use of ViaPath Technologies and communications between Plaintiff, ODRC and this Court, including but not limited to the use of

---

[13] The lack of formal diagnosis is particularly relevant here, where Plaintiff alleges a vague but undiagnosed chronic condition based upon an alleged statement by an unknown person following a 2004 blood test. In contrast, a hypothetical plaintiff who alleges that prison officials are refusing to examine an acute injury of a broken bone close in time to the filing of his complaint arguably could still meet the "imminent danger" exception despite the lack of a formal diagnosis. In short, context matters.

>> an "Assigned ViaPath device" and any "necessary peripherals" and "ViaPath Biometric Verification Technology to Validate Service.";
> 4. An Order setting forth directives for the maintenance of Plaintiff's corpse and preventing cremation to "allow future autopsies to be performed."

Plaintiff argues that a TRO is necessary to "protect the Plaintiff's 8th [and] 14th …constitutional rights," and to ensure that his family is able to continue this litigation after his death, which he speculates will "probably" occur prior to the conclusion of this case. (Doc. 10 at 4-10, PageID 232-238).

Plaintiff's motion for a TRO should be denied. In determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban Cty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000) (additional citation omitted). These factors are not prerequisites, but are factors that are to be balanced against each other. *Id.* (citations omitted). The allegations in Plaintiff's motion are insufficient to show any of these requirements. Moreover, when an injunction is sought by an inmate against state prison officials, the Sixth Circuit has noted that findings of fact in support of any granted relief are "especially critical" since such an order would necessarily intrude "significantly into the prerogatives of state correctional officials." *See Glover v. Johnson,* 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland,* 740 F.2d 432, 438, n. 3 (6th Cir. 1984) ("[W]here state penal institutions are

involved, federal courts have a further reason for deference to the appropriate prison authorities") (internal quotation and citation omitted).

### IV.     Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT:**

1. Plaintiff's application to proceed *in forma pauperis* should be **DENIED** based upon the fact that he has been deemed to be subject to the "three strike" provision of 28 U.S.C. § 1915(g) and has failed to make the requisite showing of imminent danger;

2. In any pending case and in any future case in which Plaintiff seeks leave to proceed *in forma pauperis*, Plaintiff should be directed to file a notice disclosing that he has "three strikes" under § 1915(g) and identifying all prior federal cases filed in any federal court;

3. Because Plaintiff is not entitled to pay only a partial filing fee under 28 U.S.C. §1915(b), Plaintiff should be ordered to pre-pay the full filing fee within thirty (30) days in order to continue this litigation  If Plaintiff fails to timely pay the full filing fee as directed, this case should be dismissed with prejudice;

4. Plaintiff should be advised that the Court will dismiss with prejudice any future cases in which Plaintiff seeks *in forma pauperis* status without identifying previously-dismissed cases in accordance with *Sloan v. Lesza*, 181 F.3d 857 (7th Cir. 1999) and that he may be subjected to additional sanctions under Rule 11, Fed. R. Civ. P.;

5. Plaintiff's motion for a TRO (Doc. 10) should be **DENIED;**

6. Pursuant to 28 U.S.C. § 1915(a), the Court should certify that an appeal of its Order would not be taken in good faith, and should deny Plaintiff is denied leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KAVIN LEE PEEPLES,   Case No. 1:22-cv-622

    Plaintiff,

        v.

DAVID C. CONLEY,

    Defendant.

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).